| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Case No. 17–67 (RBW) |
| | ) | |
| KHARYI BATTLE | ) | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Case No. 17–69 (RBW) |
| | ) | |
| SHANE BROOKS | ) | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Case No. 17–74 (RBW) |
| | ) | |
| VICTORIA MORGAN | ) | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Case No. 17–77 (RBW) |
| | ) | |
| BOBBY RODGERS | ) | |

## **MEMORANDUM OPINION**

Currently before the Court are the four defendants' motions to classify the criminal

contempt charges filed against them in these cases as misdemeanor offenses rather than as felony

offenses. See generally Motion to Strike and Statement of Defendant's Position as to the

Classification of Criminal Contempt ("Def. Battle's Mot."), Crim. Action No. 17-67, ECF No.

19; Motion to Reduce Charges ("Def. Brooks' Mot."), Crim. Action No. 17-69, ECF No. 20;

Motion to Classify Contempt as Class A Misdemeanor ("Def. Morgan's Mot."), Crim. Action

No. 17-74, ECF No. 19; Defendant Bobby Rodgers' Motion to Classify Contempt as a

Misdemeanor ("Def. Rodgers' Mot."), Crim. Action No. 17-77, ECF No. 19. Upon careful

consideration of the parties' submissions,[1] the Court concludes that it must deny the defendants' motions and classify their criminal contempt charges under 18 U.S.C. § 401(3) as felony offenses subject to, among other penalties, the penalty of incarceration with no maximum limitation.

## I.  BACKGROUND

As alleged in their indictments, the defendants, who were already incarcerated due to their convictions in other criminal matters, were compelled through a written order by this Court to testify "at the trial of Anthony Pryor and Lance Yarbough, for a charge of conspiracy to possess with intent to distribute and to distribute heroin, [in Criminal] Case Number 14-270 (W.D. Pa.)." Indictment, Crim. Action No. 17-67, ECF No. 1. Despite the Court's orders "compelling [the defendants] to testify pursuant to [their] grant[s] of immunity" by the government, see id., the defendants, when called by the government to provide testimony on January 17, 2017, at the above referenced trial, refused to testify. Upon the defendants' refusals to testify, the Court engaged in a colloquy with each defendant, during which the Court explained to each defendant that they did not have a legal basis to refuse to testify and that if they elected to not testify, they could be held in criminal contempt. See, e.g., Jan. 17, 2017 Trial Transcript ("Tr.") at 51. Additionally, the Court informed each defendant that, if they were held in criminal contempt by the Court, they faced an additional six-month prison sentence. The Court also cautioned each defendant that the government could decide to indict them for their refusal to testify, and that, if the government did obtain indictments, the defendants could be "sentenced to life imprisonment without the possibility of ever being released." Id. at 52:9–10.

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the government's Omnibus Response to Defendants' Motions Related to Whether Contempt of Court is a Felony Offense ("Gov't's Opp'n") and (2) Defendant[] [Morgan's] Reply to Government's Omnibus Response to Defendant's Motion Related to Whether Contempt of Court is a Felony Offense ("Def. Morgan's Reply").

Notwithstanding the Court's warnings, the defendants maintained their refusal to testify.

Contemporaneously with refusing to testify, defendant Battle requested that the Court "issue a show cause order and to schedule a contempt hearing under [Federal] Rule [of Criminal Procedure] 42." Id. at 53:10–11. In opposition, the government indicated that it intended to seek indictments against each defendant because it was the government's position that the defendants' conduct "[wa]s serious and deserving of an indictment and a sentence in excess of six months in jail." Id. at 54:13–14. The Court agreed with the government, concluding that it was appropriate for "the [G]overnment [to] have the option of assessing whether it wants to proceed by way of an indictment." Id. at 54:17–55:3. Accordingly, to "give the government adequate opportunity to assess whether it want[ed] to proceed by way of indictment," id. at 55:4–10, the Court scheduled a status conference for a later date for each defendant, id. at 57. However, the Court noted that the defendants "would be cited for contempt by the Court and sentenced appropriately . . . [i]f the government decide[d] not to proceed" with indictments. Id. at 55:4–10.

On March 14, 2017, the government obtained indictments against each defendant, charging them with criminal contempt in violation of 18 U.S.C. § 401(3) for "willfully and knowingly disobey[ing] and resist[ing] the lawful order and command of a Court of the United States." Indictment, Crim. Action No. 17-67, ECF No. 1. The indictments also state that the criminal contempt charges subject the defendants to "[a]n unlimited period of incarceration[,] . . . [a]n unlimited period of supervised release[,] . . . [and a]n unlimited amount in fines." Indictment Mem., Crim. Action No. 17-67, ECF No. 2. Thereafter, the Court conducted status conferences to determine how the parties wished to proceed in light of the indictments, and at these status conferences, the Court granted the defendants' oral requests for leave to file motions requesting that the Court classify their criminal contempt charges as misdemeanor offenses. The

parties have now completed their briefing of the defendants' motions, and the Court will therefore now address whether the criminal contempt offenses as charged in the indictments are properly classified as misdemeanor or felony offenses.

## II.    ANALYSIS

Section 401(3) authorizes courts "to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." Section 401 therefore does not impose a maximum possible penalty for its violation, and it does not designate whether a violation constitutes a felony or misdemeanor. See generally 18 U.S.C. § 401. However, the language of the statute explicitly grants courts broad discretion in their determination of the appropriate punishment to impose. See id.; see also In re Solomon, 465 F.3d 114, 121 (3d Cir. 2006) ("Indeed, there are no statutory limits on the court's discretion to impose penalties for criminal contempt."). Nonetheless, the defendants contend for various reasons that the Court should classify their criminal contempt charges as alleged in the indictments as misdemeanor offenses. The Court will address each of the defendants' arguments in turn.

### A. The Court's Jurisdiction to Resolve the Pending Motions

At the outset, the government asserts that it "belie[ves] that the Court is without authority to decide this issue at this point" because the Court's decision on this issue "would have no impact on the admission of evidence or any of the defendants' substantive rights," and therefore, the Court's decision on "whether these charges are felony or misdemeanor offenses would be" nothing more than an advisory opinion, which the Court is precluded from issuing by Article III of the United States Constitution. Gov't's Opp'n at 2. Accordingly, the government contends that "the Court should deny the defendants' motions because it lacks jurisdiction to decide

[them]." Id. The Court disagrees.

While the Court appreciates that it lacks jurisdiction to render advisory opinions, see Rhone-Poulenc Surfacants and Specialties, L.P. v. Comm'r, 249 F.3d 175, 181–82 (3d Cir. 2001) (noting that Article III, Section II of the Constitution "stands as a direct prohibition on the issuance of advisory opinions" (quoting Travelers Ins. Co. v. Obusek, 72 F.3d 1148, 1153 (3d Cir. 1995))), the Court does not consider addressing the issue of whether the defendants' criminal contempt charges are misdemeanor or felony offenses as equivalent to rendering "an opinion advising what the law would be on a hypothetical state of facts," PSA, LLC v. Gonzales, 271 F. App'x 218, 220 (3d Cir. 2008) (quoting Step-Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643, 649 (3d Cir. 1990)). Quite to the contrary, this legal issue presents a "controversy that is real and not hypothetical . . . [and] that affects [the defendants] in a concrete manner so as to provide the factual predicate for reasoned adjudication." Travelers Ins. Co., 72 F.3d at 1154 (quoting Armstrong World Indus., Inc. v. Adams, 961 F.2d 405, 410 (3d Cir. 1992)). And, as defendant Morgan notes, "the [g]overnment has sought and obtained . . . indictment[s] against [each of] the defendant[s]," Def. Morgan's Reply at 1, for their alleged contemptuous conduct, which statutorily subjects them to an unspecified term of punishment, see 18 U.S.C. § 401. Consequently, there can be no greater controversy than the one presented here, which among other consequences, directly impacts the period of time the defendants' liberties may be involuntarily denied due to the criminal charges brought against them by their government.

Contrary to the government's position that the Court's decision on this issue would not have any impact on the defendants' substantive rights, see Gov't's Opp'n at 2, the defendants' due process rights are implicated by the Court's decision. Due process embodies the "[e]lementary notions of fairness enshrined in our constitutional jurisprudence[, which] dictate

that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that . . . may [be] impose[d]." BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 574 (1996); see also Lankford v. Idaho, 500 U.S. 110, 120–22 (1991) (concluding that due process was violated because the defendant and his counsel did not have adequate notice "that the trial judge was contemplating a death sentence"); United States v. Spiers, 82 F.3d 1274, 1282 (3d Cir. 1996) (noting that due process is not violated "[a]s long as the defendant has adequate notice [of the punishment that] may be imposed"). Furthermore, the Court's conclusion that it has jurisdiction to adjudicate the pending motions is supported by the case law cited by both the defendants and the government addressing the issue of whether the criminal contempt the defendants are charged with committing should be classified as a misdemeanor or a felony. See Gov't's Opp'n at 3–4 (discussing the defendants' reliance on cases from the First, Third, Ninth, and Eleventh Circuits that have addressed this issue). Accordingly, the Court concludes that it has jurisdiction to address the pending motions.

## B. The Applicability of Federal Rule of Criminal Procedure 42(b) and 18 U.S.C. § 3691

### 1. Summary Disposition Under Rule 42(b)

In relevant part, Federal Rule of Criminal Procedure 42 provides that "[a] court . . . may summarily punish a person who commits criminal contempt in its presence if the judge saw or heard the contemptuous conduct and so certifies." Fed. R. Crim. P. 42(b) (emphasis added). Defendants Battle and Brooks argue that the criminal contempt offenses they are charged with committing should be classified as misdemeanor offenses with a maximum sentence of incarceration of six months because their refusal to testify in the presence of the Court falls within the purview of the Court's summary disposition authority under Rule 42(b). See, e.g., Def. Brooks' Mot.; Def. Battle's Mot. at 2–3. In response, the government contends that "Rule

42 provides no guidance as to whether, under the circumstances of this case, the offenses are felony or misdemeanor offenses" because Rule 42 does not require "the Court [to] summarily punish contemptuous conduct that occurs in [the Court's] presence." Gov't Opp'n at 6.

Based on Rule 42(b)'s plain language, summary disposition is an available tool of punishment for contemptuous conduct made in a court's presence, if the court, in its discretion, concludes that summary disposition is appropriate under the circumstances. See Harris v. United States, 382 U.S. 162, 167 (1965) (noting that summary disposition was envisioned for situations "where instant action is necessary to protect the judicial institution itself"). And summary punishment under Rule 42(b) carries a maximum term of punishment of six months. See Codispoti v. Pennsylvania, 418 U.S. 506, 513–14 (1974) ("Undoubtedly, where the necessity of circumstances warrants, a contemnor may be summarily tried for an act of contempt during trial and punished by a term of no more than six months."). However, a court is not mandated to summarily punish contemptuous conduct that occurs in its presence, as Rule 42 also permits the prosecution of an individual who commits criminal contempt. See Fed. R. Crim. P. 42(a) (outlining procedural safeguards for the prosecution of criminal contempt); see also Harris, 382 U.S. at 166–67 (discussing the procedural safeguards of Rule 42(a) and providing factual scenarios when a trial pursuant to Rule 42(a) would be appropriate).

Although the defendants' alleged contemptuous conduct in this case occurred in the Court's presence and upon a finding of guilt the Court could have summarily punished them, see United States v. Wilson, 421 U.S. 309, 314–19 (1975) (concluding that the trial court's summary punishment of two witnesses who refused to testify after both witnesses received immunity was appropriate because their refusal to testify were "intentional obstructions of court proceedings that literally disrupted the progress of the trial and hence the orderly administration of justice"),

the Court, as the government notes, see Gov't Opp'n at 6, did not summarily act pursuant to Rule 42(b), but rather provided the government the opportunity to seek indictments against the defendants as permitted by Rule 42(a), see supra Part I, at 2. Thus, even though the defendants' contemptuous conduct could have been summarily punished under Rule 42(b), which would have rendered their contemptuous conduct as misdemeanor offenses given the six-month maximum sentence for summary dispositions, the Court's decision to allow the prosecution of the defendants' contemptuous conduct under Rule 42(a), and the fact that the government obtained indictments against the defendants, removed the defendants' contemptuous conduct from the purview of Rule 42(b). Therefore, summary disposition under Rule 42(b), coupled with its six-month maximum sentence, have no bearing on the Court's decision on whether to classify the defendants' contemptuous conduct as charged in the indictments as misdemeanor or felony offenses.

### 2. Right to a Jury Trial Pursuant to 18 U.S.C. § 3691

Defendant Battle also argues that the criminal contempt he is accused of committing should be classified as a misdemeanor offense because, pursuant to 18 U.S.C. § 3691, "no [statutory] right to a jury trial exists" for criminal contempt predicated on the refusal to testify, Def. Battle's Mot. at 5, and therefore, his criminal contempt charge cannot be categorized as a felony, see id. In response, the government contends that "§ 3691 has no application to the facts of this case" because "the defendants' criminal conduct in this case does not constitute an independent criminal offense." Gov't's Opp'n at 5. The Court agrees with the government.

Section 3691, which operates in conjunction with 18 U.S.C. § 402, states, in pertinent part, that when an individual's contemptuous conduct "also constitutes a criminal offense under any Act of Congress, or under the laws of any state in which it was done . . . , the accused, upon

demand therefor, shall be entitled to trial by a jury."[2]  Section 3691 further states that it "shall not apply to contempts committed in the presence of the court, or so near thereto as to obstruct the administration of justice."  Accordingly, "read together, §§ 402 and 3691 modify § 401 by creating a right to a jury trial in favor of a person charged with criminal contempt of a court order, where the conduct constituting the contempt charged also happens to constitute a federal or state criminal offense."  United States v. Pyle, 518 F. Supp. 139, 146 (E.D. Pa. 1981) (discussing the legislative history and purpose of these statutory provisions, which "were intended to end an abuse of the contempt power in which, in some circumstances, persons were prosecuted for contempt of injunctions instead of for violations of criminal laws stemming from the same conduct and were thus deprived of their right to trial by jury"), aff'd, 722 F.2d 736 (3d Cir. 1983) (unpublished table decision).

Here, defendant Battle does not allege that his refusal to testify, the conduct constituting the charged contempt, separately constitutes a federal or Commonwealth of Pennsylvania criminal offense as required under § 3691.  See Def. Battle's Mot. at 2 ("There is no additional criminal act, beyond that of alleged disobedience to a court order, in this case.").  Additionally, as the government notes, defendant Battle has not offered any evidence or legal authority for the proposition that Congress' "intent [was] to use . . . § 3691 to occupy the field of instances in which defendants charged with contempt are entitled to jury trials."  Gov't Opp'n at 5.  In other

---

[2] Section 402 provides in relevant part:

> Any person . . . willfully disobeying any lawful writ, process, order, rule, decree, or command of any district court of the United States . . . by doing any act or thing therein, or thereby forbidden, if the act or thing so done be of such character as to constitute also a criminal offense under any statute of the United States or under the laws of any State in which the act was committed, shall be prosecuted for such contempt as provided in [§] 3691 of this title and shall be punished by a fine under this title or imprisonment, or both.

Section 402 also states that "[t]his section shall not be construed to relate to contempts committed in the presence of the court, or so near thereto as to obstruct the administration of justice."

words, there is no indication that Congress intended to provide defendants a statutory right to trial by jury <u>only</u> when their contemptuous conducts also constitutes a separate federal or state law violation. If so construed,

> the Government could avoid having to deal with the vital protections accorded by §§ 402 and 3691 simply by typing in the indictment that the accused is charged only with a violation of "§ 401." A more sensible construction is that, where the person is charged with criminal contempt only under § 401, but in fact the contempt charged consists of conduct which also violates state or federal criminal law, the provisions of §§ 402 and 3691 automatically come into play. That consequence should not depend solely on the choice by the draftsman not to mention § 402.

<u>Pyle</u>, 518 F. Supp. at 146. The Court's conclusion is further supported by the fact that construing the situation otherwise (i.e., there being the right to trial by jury <u>only</u> when the defendant's conduct comprising the criminal contempt charge is also a federal or state law violation) would render Rule 42(a) meaningless, which as discussed above provides for the prosecution of criminal contempt, without the limitation of the contemptuous conduct also being a federal or state law violation. Accordingly, the Court does not find that § 3691 applies to the circumstances presented in this case.

### C. Classification of the Criminal Contempt Charges

As noted in the parties' submissions, "[c]ourts disagree on how to characterize the maximum punishment for [c]ontempt of [c]ourt" where an indictment has been issued. Gov't's Opp'n at 3; <u>see generally</u> Def. Rodgers' Mot.; Def. Morgan's Mot. The government and two of the defendants insist that the result they advocate is required by precedent of this Circuit and the Supreme Court, along with decisions by other circuits addressing the classification of criminal contempt charges. In determining whether the criminal contempt charges in this case should be classified as misdemeanor or felony offenses, the Court will address in turn each of the precedents relied on by the parties.

First, defendant Rodgers cites the Third Circuit's decision in In re Solomon, 465 F.3d

114 (3d Cir. 2006), as support for his position "that classifying the contempt, by the sentencing

court's 'actual sentence,' best determines the underlying conducts gravity, and is far more fair

than labeling all contempts as class A felonies with 'life' maximums." Def. Rodgers' Mot. at 6.

In In re Solomon, the appellant sought "review of the district court's order[] . . . finding [him]

guilty of criminal contempt for failing to comply with a grand jury subpoena and a subsequent

court order, and imposing a five-month prison sentence therefor." 465 F.3d at 115–16. As "the

subject of a federal grand jury investigation concerning his alleged narcotic trafficking activities,

as well as his involvement in [a] murder," the appellant "was served with a federal grand jury

subpoena for handwriting exemplars." Id. at 116. The appellant declined to provide the

exemplars, and thereafter, "the district court entered an order compelling [the appellant] to

provide handwriting exemplars." Id. Again, the appellant refused to provide the exemplars, and

thereafter, at a hearing during which the appellant was advised of the potential penalties he faced

for refusing to comply,[3] the district court, presumably pursuant to Rule 42(b), held the appellant

in criminal contempt and sentenced him to five months incarceration. See id. at 116–17. Upon

"concluding that the district court did not abuse its discretion by imposing a five-month sentence

upon [the appellant]," id. at 122, the Third Circuit noted:

> Most federal crimes are classified by felony or misdemeanor letter grades on the
> basis of the maximum sentence that can be imposed. Contempt, however, cannot
> be classified in this manner because there is no maximum sentence imposed by
> statute. Instead, to classify [the appellant's] criminal contempt[,] we look to the
> actual sentence imposed.

Id. at 119 (citations omitted). Thus, from defendant Rodgers' perspective, he "need only be

advised that his plea to the contempt indictment exposes him to a maximum penalty[] of life

---

[3] The opinion does not indicate what potential penalties the appellant was told he faced.

imprisonment . . . if th[e] [C]ourt opts to defer its determination of what sentence it intends to impose on [him] until the actual sentence." Def. Rodgers' Mot. at 3–4. (citing decisions by "[o]ther judges in [this] District [that] have accepted guilty pleas in contempt cases, and opted to advise [the] particular defendant of . . . the potential maximum penalties, including life").

Although acknowledging that the Third Circuit's approach of determining the offense's classification by looking at the sentence imposed "is consistent with that taken by the Eleventh Circuit and the Supreme Court," Def. Morgan's Mot. at 2, defendant Morgan contends that "the approach taken by the Ninth Circuit makes the most sense: a court should look to the most analogous offense to the conduct constituting the alleged contempt," id. at 6. In United States v. Broussard, the appellant "appealed [his criminal contempt] sentence, arguing that his contempt conviction should have been classified as a Class E felony" rather than a Class A felony. 611 F.3d 1069, 1071 (9th Cir. 2010). In affirming the district court's decision, the Ninth Circuit "consider[ed] how convictions for contempt of court are classified for sentencing purposes in the wake of" the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005).[4] Id. at 1070. "Because criminal contempt has no statutory maximum sentence, 18 U.S.C. § 401, [the Ninth Circuit concluded that] under a literal reading of the classification statute, [criminal contempt] would be a Class A felony." Id. at 1071–72. However, the court stated, because "[i]t would be unreasonable to conclude that by authorizing an open-ended range of punishments to enable courts to address even the most egregious contempts appropriately, Congress meant to brand all contempts as serious and all contemnors as felons." Id. at 1072 (alteration in original) (quoting United States v. Carpenter, 91 F.3d 1282, 1284 (9th Cir. 1996)). Prior to Booker, the

---

[4] In Booker, the Supreme Court held unconstitutional 18 U.S.C. § 3553(b)(1), "the provision of the federal sentencing statute that [made] the [United States Sentencing] Guidelines mandatory." 543 U.S. at 245. "Conclud[ing] that this provision [had to] be severed and excised," the Supreme Court found "the federal sentencing statute . . . , as amended, . . . rendered "the Guidelines effectively advisory." Id.

Ninth Circuit had concluded that "criminal contempt should be classified for sentencing purposes according to the applicable Guidelines range for the most nearly analogous offense." Id. (quoting Carpenter, 91 F.3d at 1285). In compliance with Booker, the Ninth Circuit determined that its prior rule "remain[ed] in place: The severity of contempt violations for [sentencing classification] purposes . . . turns on the most analogous underlying offense. But judges are no longer limited to the maximum guidelines sentence for that offense; instead, the statutory maximum is now the 'the upper limit of the district judge's discretion.'" Id. (internal citation omitted) (quoting Carpenter, 91 F.3d at 1285).

As support for its position, the government relies on the First Circuit's decision in United States v. Wright, 812 F.3d 27 (1st Cir. 2016), for the proposition that the Court should conclude that the criminal contempt charges should be classified as felony offenses because the maximum punishment available is life. See Gov't's Opp'n at 4. In Wright, the appellant challenged the district court's determination that his criminal contempt qualified as a Class A felony. See 812 F.3d at 29. In affirming the district court's determination, the First Circuit, based upon a plain reading of § 401, "join[ed] the Seventh Circuit in holding that the statutory maximum for the offense of criminal contempt . . . is life imprisonment," and further held "that criminal contempt should be classified as a Class A felony for [sentencing classification] purposes of 18 U.S.C. § 3559(a)." Id. at 32. The First Circuit reasoned:

> The rationale for this reading was well stated in United States v. Turner, 389 F.3d 111 (4th Cir. 2004): "[T]he sensible rule of statutory construction [is that] the absence of a specified maximum simply means that the maximum is life imprisonment. By declining to limit the penalty, Congress gives maximum discretion to the sentencing court[.]" Id. at 120. The Supreme Court's reading of the contempt statute's language further supports this view. See Frank v. United States, 395 U.S. 147, 149 . . . (1969) (explaining that, through the criminal contempt statute, Congress "has authorized courts to impose penalties but has not placed any specific limits on their discretion"). Under the plain reading of the statute, the maximum penalty for criminal contempt should therefore be life imprisonment.

> Under 18 U.S.C. § 3559(a), that makes it a Class A felony. <u>See</u> 18 U.S.C. § 3559(a) (providing that '[a]n offense that is not specifically classified by a letter grade in the section defining it, is classified if the maximum term of imprisonment authorized is—(1) life imprisonment, or if the maximum penalty is death, as a Class A felony").

<u>Id.</u> at 32–33 (first, second, and fourth alterations in original).

In issuing its ruling, the First Circuit explained its disagreement with the approaches taken by the Ninth and Eleventh Circuits. Primarily, the First Circuit noted that it "generally do[es] not depart from a statute's plain language 'absent either undeniable textual ambiguity, or some other extraordinary consideration, such as the prospect of yielding a patently absurd result.'" <u>Id.</u> at 33 (quoting <u>United States v. Fernandez</u>, 722 F.3d 1, 10 (1st Cir. 2013)). Responding to the Ninth Circuit's approach, the First Circuit did not "think the concerns raised by the Ninth Circuit [were] . . . enough to warrant disregarding the plain language of the classification scheme Congress set forth in 18 U.S.C. § 3559(a)." <u>Id.</u> This is so, the First Circuit found, because the Ninth Circuit's conclusion was not based on the language of either §§ 401 or 3559(a) being ambiguous. <u>See id.</u> at 33. Moreover, the First Circuit did

> not find that classifying criminal contempt as a Class A felony is so unreasonable as to be "patently absurd." Rather, in agreement with the Supreme Court, [it found] it not absurd for Congress to have considered the broad power of contempt "essential to ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on other Branches."

<u>Id.</u> (internal citations omitted). And, the First Circuit was "not persuaded [by the Ninth Circuit's reasoning] that Congress could not have intended to label contempt as a Class A felony because of the seriousness of the 'felon' appellation." <u>Id.</u> Instead, the First Circuit concluded that "[h]owever seemingly harsh those consequences might be, it is the choice of Congress, and not the courts, to create sentencing policy." <u>Id.</u> at 34. Finally, because from the First Circuit's perspective, "no argument ha[d] been presented, and [it found] none, for why the felon

14

appellation is 'patently absurd,' [the First Circuit] decline[d] to adopt the approach of the Ninth Circuit." Id. at 34 (internal citation omitted).

The First Circuit was "also not persuaded by the decision of the Eleventh Circuit to completely forgo classifying criminal contempt and avoid setting a maximum potential punishment." Id. In United States v. Cohn, 586 F.3d 844 (11th Cir. 2009), because "the Supreme Court has referred to criminal contempt as an offense 'sui generis,'" and because "criminal contempt is unlike other crimes classified by § 3559(a) in that contempt may be charged without indictment and may be prosecuted by appointed private attorneys," the Eleventh Circuit "held that criminal contempt is a 'sui generis offense' that cannot be classified under § 3559(a)," which it reasoned was consistent "with the breadth of conduct covered by the statute." Id. (citing Cohn, 586 F.3d at 848–49). Having "already rejected the breadth of conduct covered by the statute as a reason to override [the statute's] plain language or that of 18 U.S.C. § 3559(a)," the First Circuit determined that there was

> no basis to conclude from the fact that the Supreme Court has referred to an offense as "sui generis" that Congress could not have intended for an offense with a maximum term of life imprisonment to be classified as a Class A felony for § 3559(a) purposes. Congress may limit the court's discretion when addressing criminal contempt, but so far it has not chosen to do so. That contempt may be charged and prosecuted somewhat differently from other crimes is also not reason enough to eschew Congress's scheme.

Id.

Finally, in holding that criminal contempt under § 401 is a Class A felony, the First Circuit emphasized that "Congress has not left the contempt power unchecked . . . [and] share[d] the concerns about the potential for untoward and harsh sentences resulting from a Class A classification." Id. Despite these concerns, the First Circuit believed "the answer comes at the next stage—at the actual choice of the sentence, after consideration of all of the relevant

sentencing factors." Id. at 34–35 (observing that is what occurred below, as the "district court reviewed the case, noted the maximum of sixty months, and issued a sentence of half that length" (footnote omitted)).[5]

With this backdrop, the Court concludes that the approach taken by the First Circuit, although not binding authority, is the proper approach given the plain reading of §§ 401 and 3559(a), and therefore finds that the defendants' criminal contempt charges are Class A felony offenses. While the approach taken by the Third Circuit in In re Solomon is controlling (i.e., determining the offense's classification by looking at the sentence actually imposed), the Court finds the facts in In re Solomon distinguishable from the facts presented here. Primarily, in In re Solomon, the defendant was held in criminal contempt by the court and immediately sentenced to a five-month period of incarceration presumably pursuant to Rule 42(b). See 465 F.3d at 116–17. Here, as previously noted, the Court did not exercise its summary disposition authority, but rather the government obtained indictments against the defendants, providing the defendants with the potential of having a jury trial, if they chose that course, and therefore forcing the government to unanimously prove to twelve jurors the essential elements of the criminal contempt charges beyond a reasonable doubt. Therefore, the Court does not believe that the precedent established in In re Solomon apply to the circumstances presented in this case.[6]

---

[5] Pursuant to 18 U.S.C. § 3583(3), a defendant may be required to serve a maximum of five years in prison for the revocation of a term of supervised release "if the offense that resulted in the term of supervised release is a class A felony." In Wright, the appellant "appeal[ed] from an order that revoked his supervised release on underlying convictions of being a felon in possession of a firearm and criminal contempt, and imposed a sentence of thirty months of imprisonment." 812 F.3d at 29.

[6] In its review of the decisions by the various circuits that have addressed the issue of whether criminal contempt is classified as a misdemeanor or felony offense, the Court notes that none of the Ninth, Eleventh, or First Circuit decisions addressed the Third Circuit's decision in In re Solomon, which was decided prior to their decisions. See generally Broussard, 611 F.3d at 1069; Cohn, 586 F.3d at 844; Wright, 812 F.3d at 27. The Court finds those other circuits' failure to discuss In re Solomon to be indicative of the lack of factual commonality, consistent with the conclusion reached by this Court.

The Court does not consider the approach taken by the First Circuit to be entirely inconsistent with the current practice of judges in this District. Although the judges in this District have not taken the step of classifying criminal contempt as a Class A felony, as defendant Rodgers' notes, see Def. Rodgers' Mot. at 4, several of this Court's colleagues, while accepting guilty pleas in criminal contempt cases, have conducted felony guilty plea colloquies, advising the defendants of their right to a trial by jury and the potential maximum penalties, including an unlimited period of incarceration. See, e.g., United States v. Ratchkauskas, Crim. No. 15-75, ECF No. 42, at 4 (W.D. Pa. Apr. 20, 2016) (Fischer, J.) (citing United States v. Spruill, Crim. No. 13-292, ECF No. 49 (W.D. Pa. Jun. 19, 2014) (Bissoon, J.); United States v. Mitchell, Crim. No. 14-36, ECF No. 49 (W.D. Pa. Dec. 31, 2014) (Bloch, J.)). However, just as the First Circuit suggested regarding the answer to "the concerns about the potential for untoward and harsh sentences resulting from a Class A classification," Wright, 812 F.3d at 34, two of this Court's colleagues sentenced defendants to terms of incarceration that were far less than life imprisonment after carefully considering the relevant sentencing factors, see, e.g., Spruill, ECF No. 44, at 2 (sentencing the defendant to a twenty-one month prison sentence); Mitchell, ECF No. 51, at 2 (same). Consequently, the Court finds the First Circuit's approach generally consistent with the approach taken in this District.

Furthermore, the Court believes that delaying classification of the offense until the imposition of the sentence denies the defendants the right to know whether they are entitled to a trial by jury before deciding how their culpability should be resolved. As Justice Harlan recognized, "to decide whether to proffer a jury trial, the judge must now look ahead to the sentence, which itself depends on the precise facts the trial is to reveal." Cheff v. Schnackenberg, 384 U.S. 373, 382 (1966) (Harlan, J. concurring). Thus, applying a post hoc

approach in the cases now before the Court would unfairly impede (1) the defendants' ability to make an informed decision about whether to plead guilty or go to trial; and (2) if the defendants want their cases resolved by trial, whether they have the option of proceeding before a jury due to the maximum penalty they face.

Finally, because the Court agrees with the First Circuit's reasoning, the Court likewise declines to follow the approaches taken by either the Ninth or Eleventh Circuits. In adopting the First Circuit's position in <u>Wright</u>, this Court concurs that the plain language of §§ 401 and 3559(a) is controlling. And without any showing that the statutes are ambiguous or that their interpretation would produce an absurd result, this Court may not depart from the plain meaning of the statutes. <u>See</u> <u>Idahoan Fresh v. Advantage Produce, Inc.</u>, 157 F.3d 197, 202 (3d Cir. 1998) ("Where the statutory language is plain and unambiguous, further inquiry is not required, except in the extraordinary case where a literal reading of the language produces an absurd result.").[7]

## III.    CONCLUSION

For the foregoing reasons, the Court classifies the defendants' criminal contempt charges as Class A felony offenses, and therefore, the defendants' motions to classify their offenses as misdemeanors must be denied.

**SO ORDERED** this ~~17th~~ day of July, 2017.[8]

United States District Judge

---

[7] In her motion, defendant Morgan argues that interpreting 18 U.S.C. § 402 to authorize any sentence beyond a period of six-month imprisonment would bring about absurd results. <u>See</u> Def. Morgan's Mot. at 4–5. However, given that the Court has already decided that § 402 does not apply to these cases, <u>see</u> <u>supra</u> Part II.B.2, the Court need not consider this argument.

[8] An Order consistent with this Memorandum Opinion is issued simultaneously with this opinion.